Jerry COOK *v.* STATE of Arkansas

CR 95-298                                    906 S.W.2d 681

Supreme Court of Arkansas
Opinion delivered October 2, 1995

642

*Doug Norwood*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Deputy Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Justice. Appellant Jerry Dean Cook was convicted in municipal court of driving while intoxicated and violation of the implied consent law for refusing to take a breathalyzer test. He appealed to circuit court and in a jury trial before a chancellor sitting in exchange, was again convicted of both offenses.

On appeal he challenges the authority of the chancellor to sit in exchange for the circuit judge and asserts the trial judge erred in three respects, by failing to declare the lower court system to be an unconstitutional violation of his right to both speedy and jury trial, by failing to declare the implied consent statute unconstitutional on equal protection grounds, and by failing to make the exchange agreement with the circuit judge a part of the record. All four points are without merit, and we affirm.

On July 25, 1993, the appellant was arrested in Benton County for driving while intoxicated and various other traffic offenses. On December 14, 1993, he was found guilty of driving while intoxicated and violation of the implied consent law, in the Rogers Municipal Court. Cook appealed the municipal court convictions to the Benton County Circuit Court by notice of appeal filed December 29, 1993.

A jury trial was conducted in the Benton County Circuit Court on November 4, 1994, before Chancellor Don Huffman, who was sitting in exchange for Circuit Judge Terry Crabtree; appellant was again found guilty of driving while intoxicated and violation of the implied consent law. His driver's license was sus-

pended for ninety days for DWI and for six months for violation of the implied consent law; he was also fined $1,000, ordered to pay court costs, sentenced to five days in the Benton County Jail, and ordered to complete a treatment program.

### a. Speedy trial and jury trial

The appellant first contends that the trial court erred in not declaring the system of lower courts (municipal, city, mayor, and police) in Benton County to be an unconstitutional violation of his rights to speedy trial and jury trial. Appellant raised the issue in a pretrial motion to dismiss in which he argued that it was a violation of equal protection to require persons charged as he was in municipal court to undergo two trials in order to have a jury trial. He further argued that such persons must undergo two speedy trial periods rather than one, and the entire lower court system therefore systematically violates the speedy trial and jury trial rights of a substantial number of criminal defendants.

■■ In arguing his motion to the trial judge, appellant's counsel acknowledged that this court had ruled on the speedy trial issue in *McBride* v. *State*, 297 Ark. 410, 762 S.W.2d 785 (1989), where we held that upon appeal of a municipal court decision to circuit court, the one year speedy trial period begins to run from the day the appeal is filed in circuit court. Appellant's appeal was lodged on December 29, 1993; he was tried in circuit court within one year, on November 4, 1994. Appellant asks that we overturn *McBride* because it allows for unequal treatment of like situated individuals in violation of Ark. Const. art. 2, §§ 3, 7, 10, and 18. Because DWI citations may be filed in either circuit or municipal court, he asserts that only those persons cited to municipal court are required to undergo two speedy trial periods. He cites no further authority nor does he advance a convincing argument for his assertion of constitutional violation; it is well established that such arguments will not be considered on appeal. *See Thomson* v. *Littlefield*, 319 Ark. 648, 893 S.W.2d 788 (1995); *Reed* v. *Glover*, 319 Ark. 16, 889 S.W.2d 729 (1994).

■ As to his contention that his right to jury trial has also been impermissibly infringed, this issue was addressed and decided in *State* v. *Roberts*, 321 Ark. 31, 900 S.W.2d 175 (1995), in which we held that the burden placed upon the right to a jury trial by requiring a proceeding in municipal court is not impermissible.

### b. Chancellor sitting as circuit judge

For his next argument, Cook challenges the authority of a chancellor to sit as a judge in a criminal case. Prior to trial, the appellant filed a motion asserting that Chancellor Don Huffman had "no legal authority to sit as a circuit judge because he was not elected by the voters of the 19th Judicial District as a circuit judge." According to arguments presented during the pretrial hearing, Chancellor Donald Huffman was sitting in exchange for Circuit Judge Terry Crabtree, both of the Nineteenth Judicial District. The appellant asserted the case should be transferred to a regular circuit judge because the chancellor had no legal authority to sit as a circuit judge in a criminal case.

In asserting that an exchange agreement between a chancellor and a circuit judge is unconstitutional, the appellant relies upon Ark. Code Ann. § 16-13-403 (Repl. 1994), Ark. Code Ann. § 16-13-2703 (Repl. 1994), and Ark. Const. art. 7, § 22. Section twenty-two of article seven of the Arkansas Constitution provides "The judges of the circuit courts may temporarily exchange circuits or hold courts for each other under such regulations as may be prescribed by law." This Court has recognized that when a chancellor presides over a session of a circuit court, he or she does so as a circuit judge, and not as a chancellor. *McEachin* v. *Martin*, 193 Ark. 787, 102 S.W.2d 864 (1937). Further, we have commented that Ark. Code Ann. § 16-13-403 (Repl. 1994), as amended by Act 51 of 1992 (1st Ex. Sess.), authorizes exchanges between circuit judges and chancellors within the same districts-circuits. *Lynch* v. *State*, 315 Ark. 47, 863 S.W.2d 834 (1993); *See also Hewitt* v. *State*, 317 Ark. 362, 877 S.W.2d 926 (1994). Finally, § 16-13-403 specifically provides it is the intent and purpose of the section to permit circuit judges to exchange districts or circuits with chancellors and to permit chancellors to exchange districts or circuits with circuit judges. Accordingly, the appellant's argument is without merit.

### c. Exchange agreement

The appellant next asserts the failure of the trial court to either make the exchange agreement a part of the record or require the prosecutor to do so is reversible error. During the pretrial hearing, counsel for the appellant admitted he was aware that Chancellor Huffman was hearing the case on exchange. After discus-

sion of appellant's three pretrial motions, the following exchange occurred between the counsel for the appellant and the trial court:

Trial Court: [a]re we ready to proceed?

Counsel: Yes, Your Honor, as far as I know. The only other thing is this issue about the exchange agreement. Now, I know that from prior cases with you that this exchange agreement, apparently is down in the Clerk's office. And I want the — I don't know who's responsible for making that exchange agreement part of the record. I don't know whether you are or whether the State is.

Trial Court: I am not. I've made my exchange agreement. It's posted. It's available. If you want, you can go get it.

Counsel: Okay. Well, my position is, I object —

Trial Court: Well, you can make it a part of the record.

Counsel: — to the fact that it's not made a part of the record. I think that that's a requirement.

Trial Court: I understand what you're saying, but it's not my practice to go and seek and provide.

Counsel: Thank you, Your Honor.

The exchange agreement is not included in the record on appeal.

■ Arkansas Code Ann. § 16-13-403(a)(2) (Repl. 1994) provides "The agreements shall be signed by the judges so agreeing and entered on the record of the court or courts so to be held." We have held that § 16-13-403 mandates that the judges sign the agreement and enter it "on the record." *Lynch* v. *State*, 315 Ark. 47, 863 S.W.2d 834 (1993). Although this Court has not addressed the consequences of the failure to enter the agreement on the record, we have commented that the failure to include the agreement is a non-jurisdictional error which may be waived. *Id.*

■ Clearly, § 16-13-403 requires that the agreement be "entered on the record of the court." In the instant case, counsel for the appellant conceded that the agreement was "in the Clerk's office" and was apparently objecting that the agreement was not included in the record of his case. However, the trial court informed counsel he could make it a part of the record. Since

appellant was given the opportunity to make the exchange agreement a part of the record of his case, the relief requested was granted, and we need not consider whether any prejudice resulted. *Richmond* v. *State*, 320 Ark. 566, 899 S.W.2d 64 (1995).

### d. Implied Consent statute

■ For his fourth and final point, appellant argues the trial judge erred in not declaring the implied consent statute unconstitutional. The appellant filed a pretrial motion seeking to declare the implied consent statute, Ark. Code Ann. § 5-65-205 (Repl. 1993), unconstitutional. The appellant asserted the statute has three different penalty provisions depending on the state of residence of the offender and the status of the offender's driver's license, and the unequal penalty provisions violate the due process clause of Ark. Const. art. 2, § 8, and the equal protection clause of Ark. Const. art. 2, § 3 and § 18. The appellant's motion was denied. The penalty provisions of Ark. Code Ann. § 5-65-205 (Repl. 1993) provide in pertinent part that the office of Driver Services shall:

(c)(1) *Suspend the motor vehicle operator's license for:*

(A) A period of not less than six (6) months nor more than one (1) year if the person had not previously refused the test within three (3) years of the refusal in question and if the person had not been convicted of driving while intoxicated or driving while there was one-tenth of one percent (0.10%) or more of alcohol in the person's blood within three (3) years of the refusal;

. . . .

(d) If the person *is a resident without a license or permit* to operate a motor vehicle in this state, the Office of Driver Services shall deny to the person the issuance of a license or permit for a period of six (6) months after the date of the arrest.

(e)(1) If the person *is a nonresident*, that person's privilege of operating a motor vehicle in Arkansas shall be suspended for not less than six (6) months.

(emphasis added.)

The appellant asserts that § 5-65-205 also allows for enhanced

penalties for an Arkansas resident who has a valid driver's license and prior convictions, but there are no enhanced penalties for subsequent offenses committed by a resident without a license or a nonresident. The statute does provide for different penalties depending on whether (1) the person is a resident of Arkansas with a valid state driver's license, (2) the person is a resident of Arkansas without a valid state driver's license, and (3) the person is not a resident of Arkansas. However, the Equal Protection Clause does not preclude all statutory classifications. *Hamilton* v. *Hamilton*, 317 Ark. 572, 879 S.W.2d 416 (1994). Indeed, we presume the statutes passed by the General Assembly are not unconstitutional and will uphold a classification in the face of an equal protection allegation if there is any basis for the classification. *McFarland* v. *McFarland*, 318 Ark. 446, 885 S.W.2d 897 (1994). A party challenging a statute must bear the burden of proving it unconstitutional. *Beck* v. *State*, 317 Ark. 154, 876 S.W.2d 561 (1994). The appellant has the burden of proving that the act is not rationally related to achieving any legitimate objective of state government under any reasonably conceivable state of facts. *Reed* v. *Glover, supra.*

■■ We merely consider whether any rational basis exists which demonstrates the possibility of a deliberate nexus with state objectives, so that the legislation is not the product of utterly arbitrary and capricious government purpose and void of any hint of deliberate and lawful purpose. *Reed* v. *Glover*, 319 Ark. 16, 889 S.W.2d 729 (1994). It is clear that the legislature has created varying penalties for violation of the implied consent law; it is equally clear that possession of an Arkansas driver's license carries with it the implied obligation to abide by state laws pertaining to driving. It is also significant that residents of Arkansas who drive without a valid driver's license and nonresidents who drive while their driver's license or driving privilege as a nonresident has been suspended are subject to additional punishment. *See* Ark. Code Ann. § 27-16-301 and § 27-16-303 (Repl. 1994). Section 27-16-301 provides it is a misdemeanor for any person to violate any provisions of the Uniform Motor Vehicle Driver's License Act; the act states that no person shall drive any motor vehicle without a valid driver's license. *See* Ark. Code Ann. § 27-16-602 (Repl. 1994). Section 27-16-303 provides that any person whose driver's license or driving privilege as a nonresident has

been suspended and who drives any motor vehicle upon the highways of this state is guilty of a misdemeanor. For these reasons, it cannot be said that Section 5-65-205, and its varying punishments, are completely devoid of a legitimate purpose.

■ The appellant further asserts the statute is unconstitutional because a nonresident's driving privileges may be suspended indefinitely under § 5-65-205(e)(1); however, he does not have standing to challenge the validity of § 5-65-205(e)(1) because he has not suffered injury as a result of the provision, nor does he belong to a class which is prejudiced by the law. *Hamilton* v. *Hamilton, supra.*

Affirmed.